## JOHN BAKER, JR. *vs.* HUMPHREY LAKEMAN.

In an action on the Rev. Sts. *c.* 19, § 6, to recover double the value of a partition fence erected by the plaintiff, after the defendant's refusal to erect it, the defendant cannot defeat the claim by showing that an assignment of his share of the fence in question was made by fence viewers under a mistaken belief of himself and the plaintiff as to the true division line of their lands, and that a part of the land on which the fence was made was afterwards adjudged to be the property or the plaintiff.

In such action, the adjudication, by the fence viewers, that the fence erected by the plaintiff is sufficient, is conclusive on the defendant, and cannot be impeached by evidence tending to show that the fence was insufficient. Nor can the defendant show, in defence, that the plaintiff's own fence was insufficient, when he applied to the fence viewers to survey the defendant's fence. and determine as to its sufficiency.

ASSUMPSIT for money laid out and expended. The action was brought to recover double the value of a partition fence built by the plaintiff, after fence viewers, pursuant to the Rev. Sts. *c.* 19, had directed the defendant to build it, and he had neglected so to do.

At the trial in the court of common pleas, before *Wells,* C. J. it appeared that the plaintiff and defendant were occupants of adjoining lands in Ipswich, and that, in 1827, a division of the line between them was made in writing by fence viewers, who assigned to each party his share of the partition fence. The defendant offered to prove that both parties then believed that they owned, on their respective sides of this line, down to low water mark, and that since that assignment, it had been decided by the supreme judicial court, (*Brown* v. *Lakeman,* 15 Pick. 151, and 17 Pick. 444,) that all the land lying between high and low water mark, on the defendant's side of said line, was and is the property of the plaintiff, and that the aforesaid division and assignment, in accordance with the rights of the parties, as then believed to exist, are not legal nor equitable, nor binding on the defendant. But the judge ruled that the evidence was inadmissible.

It also appeared that, in 1843, the plaintiff complained to the fence viewers of Ipswich that the defendant refused to

repair his part of the aforesaid partition fence ; that the fence viewers, after due notice to the parties, surveyed the defendant's fence, determined that it was insufficient, signified the same to the defendant in writing, and directed him to repair or rebuild the fence within ten days ; that the defendant neglected to repair or rebuild the fence within the time thus prescribed ; that the plaintiff afterwards rebuilt it ; that the fence viewers adjudged it to be sufficient, and gave a certificate of the value thereof, under their hands ; and that the plaintiff, more than one month before this action was commenced, demanded of the defendant double the sum ascertained by the fence viewers to be the value of the said fence, together with the fence viewers' fees.

The defendant offered to prove that the adjudication of the fence viewers that the fence built by the plaintiff was legal and sufficient, was incorrect and untrue ; that some part of the soil, on which this fence was built, was boggy and muddy, and some part of it shifting sand, and that said fence was in no respect legal and sufficient. But the judge ruled that the adjudication and return of the fence viewers were conclusive, so far as they were made *bona fide*, and that their judgment as to the value and sufficiency of the fence could not be shown to be erroneous.

The defendant also offered to prove that, at the time when the fence viewers were called by the plaintiff and acted, the plaintiff's fence, on his part of the line, was wholly insufficient ; and the defendant contended that the plaintiff, before he could maintain this action, must show that his own part of the fence was sufficient. But this evidence was excluded by the judge, and he ruled that it was not necessary for the plaintiff to show that his own fence was sufficient.

The jury found a verdict for the plaintiff, and the defendant alleged exceptions to the rulings of the judge.

*N. J. Lord & Holbrook*, for the defendant.

*O. P. Lord*, for the plaintiff.

DEWEY, J. We think the plaintiff is entitled to judgment upon the verdict in his favor. The exceptions taken to the

ruling of the court of common pleas are not sustained. 1. As to the first, that the assignment of the respective shares of the fence to the several proprietors, in the year 1827, had ceased to be binding, in consequence of the subsequent adjudication of this court as to certain controverted questions concerning the boundaries of the lands of the respective parties, we think it untenable. The facts in the case raise no question upon the construction to be given to § 5 of c. 19. of the Rev. Sts. providing that such assignment " shall be binding upon the parties and all succeeding occupants," or to § 15, that in case of such assignment, " the several owners of such lands, their heirs and assigns *forever*, shall erect and support such fences,'' as applicable to that entire change that would arise from ε subdivision of the lands, and conveyance in small parcels to different individuals; and upon that point we express no opinion.

In the present case, there has been no conveyance, no subdivision of the lands, and every thing as to legal title remains as it did at the ime of the assignment and division of the fence. I is true that there has been a judicial decision as to their legal title in 1827, which has varied the lines of the parties and affected their occupation. We do not perceive how this can have any legal effect upon the division made in 1827. If there be any provision for correcting the error, the defendant should have availed himself of it. It was the existing assignment at the time the plaintiff applied to the fence viewers to view the fence and adjudge as to its want of repair, and was properly assumed as the division between the parties in the various proceedings by the fence viewers.

2. The return of the fence viewers, adjudging the repairs made by the plaintiff sufficient, was properly held by the presiding judge as conclusive, and not liable to be impeached by evidence tending to establish its insufficiency, and to show an error in judgment on the part of the fence viewers. They are by statute constituted the tribunal to decide that question.

3. It was not competent for the defendant, upon the trial,

to show, in his defence, that the fence of the plaintiff was insufficient and out of repair at the time of his application to the fence viewers to examine and adjudicate as to the fence of the defendant. The same remedy was open to him as to the plaintiff, and if a proper case existed, he might have availed himself of it concurrently with the other party, or subsequently, at his election; but for any neglect of the plaintiff to keep in repair his part of the fence, the defendant must resort to the statute provision of making his complaint to the fence viewers.

*Exceptions overruled.*